CP:JDL

**12 M 600**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

LIGIA RESTREPO RAMOS,

         Defendant.

TO BE FILED UNDER SEAL

COMPLAINT

(18 U.S.C. § 1956(h))

- - - - - - - - - - - - - - - - -X

EASTERN DISTRICT OF NEW YORK, SS:

        JULISSA RAMIREZ, being duly sworn, deposes and states
that she is a Special Agent of the Department of the Homeland
Security, Homeland Security Investigations ("HSI"), currently
assigned to the El Dorado Task Force ("the Task Force"), duly
appointed according to law and acting as such.

        Upon information and belief, in or about and between
January 2006 and June 2012, within the Eastern District of New
York and elsewhere, the defendant LIGIA RESTREPO RAMOS did
knowingly and intentionally conspire to conduct financial
transactions in and affecting interstate and foreign commerce, to
wit: the delivery of United States currency, which involved the
proceeds of specified unlawful activity, to wit: narcotics
trafficking, knowing that the property involved in the financial
transactions represented the proceeds of some form of unlawful
activity and knowing that the transactions were designed in whole
or in part to conceal and disguise the nature, location, source,

2

ownership and control of the proceeds of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Section 1956(h))

The source of your deponent's information and the grounds for her belief are as follows:[1]

1.    I have been a Special Agent of HSI assigned to the Task Force for approximately nine years.  The Task Force is designed to combat narcotics trafficking and money laundering. Through my work with HSI and on the Task Force, I have participated in numerous money laundering investigations, during the course of which I have conducted or participated in surveillance, execution of search warrants, debriefings of informants and reviews of taped conversations and narcotics records.  Through my training, education and experience, I have become familiar with the manner in which narcotics are trafficked and the proceeds of illicit activities are laundered and the efforts of persons involved in such activity to avoid detection by law enforcement.

2.    The facts set forth in this affidavit are based in part on information that I have learned from review of written documents prepared by, and conversations with, members of HSI and

---

[1]    Because the purpose of this Complaint is to state only probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

other law enforcement agencies, and from review of various
documents obtained by subpoena, request or database searches.
Furthermore, in portions of this affidavit that describe
surveillance, all surveillance was conducted by HSI agents or
other law enforcement officers assigned to assist in this
investigation.  The observations of the involved law enforcement
officers have been related to me to supplement the activities
that I personally observed.

     3.   The Task Force is conducting an investigation of a
large-scale narcotics trafficking and money laundering
conspiracy.  Members of the conspiracy operate in foreign
countries, the Eastern District of New York, and other places to
import and distribute narcotics and launder the proceeds of this
narcotics trafficking.  During the course of the investigation,
members of the Task Force have seized large quantities of United
States currency from locations in Brooklyn, Queens, and Long
Island, New York.

     4.   The investigation has revealed that money
launderers operate out of shopping malls in Cali, Colombia,
setting up their offices in warehouse space within the malls that
is not intended for retail use.

**4**

5.   A cooperating witness (the "CW")[2/] has informed me that the CW ran a money laundering business out of an office in one of the shopping malls in Cali, Colombia.  The CW would arrange for proceeds of narcotics trafficking to be picked up from individuals in the Eastern District of New York and elsewhere and paid to individuals in Colombia.  The CW would use coded language, would frequently change telephone numbers, and would use other techniques to disguise the fact that the money the CW transferred was narcotics proceeds.

6.   The CW stated, in sum and substance and in part, that the defendant LIGIA RESTREPO RAMOS occupied an office on the same warehouse floor as the CW in a shopping mall in Cali, Colombia, starting in approximately 2006.  The CW engaged in multiple money laundering transactions directly with RESTREPO RAMOS, with both the CW and RESTREPO RAMOS using techniques to hide the narcotics-related origin of the money.  In addition, the CW was very familiar with RESTREPO RAMOS's business because of the close proximity of their businesses and because the CW often visited RESTREPO RAMOS's office.  The CW and RESTREPO RAMOS would discuss each other's money laundering contracts; the CW was present when RESTREPO RAMOS negotiated her own money laundering

---

[2/]   The CW has pleaded guilty to federal money laundering charges and is cooperating with the government in hopes of receiving a lesser sentence.  The information provided by the CW has been corroborated by independent evidence and proven reliable.

contracts; and the CW and RESTREPO RAMOS utilized the same functionaries to execute their transactions.

7. In November 2010, Colombian law enforcement officials informed the Task Force that they had received information that an individual (the "CS") would be picking up narcotics proceeds in Queens, New York, on behalf of the defendant LIGIA RESTREPO RAMOS. The CS met with a Task Force Officer ("TFO") who was acting in an undercover capacity. The TFO and the CS engaged in a conversation regarding the money pick-up in coded language, but no transaction was completed.

8. In June 2012, the CS was arrested in Queens in possession of approximately $100,000 in United States currency. The CS verbally agreed to waive his/her Miranda rights and to make statements. The CS stated, in sum and substance and in part, that the CS understood that the currency was the proceeds of narcotics trafficking.

9. The CS has since begun providing information to the Task Force in hopes of receiving a lesser sentence.[3/] The CS has informed me, in sum and substance and in part, that the CS has made multiple pick-ups of narcotics proceeds over the last several years. The CS would then deposit the money into multiple bank accounts at different banks. The CS has informed me that

---

[3/] The information provided by the CS has been corroborated by independent evidence and proven reliable.

6

the CS used coded language, frequently changed telephone numbers, disguised the packages of money, made multiple deposits, and used other techniques to disguise the origin of the money.

WHEREFORE, your deponent respectfully requests that the defendant LIGIA RESTREPO RAMOS be dealt with according to law.

JULISSA RAMIREZ
Special Agent
HSI

Sworn to before me this
22nd day of June, 2012


UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK